Opinion op the Court.
THE heirs of William Bobb filed their bill against John. Bobb, alleging that their ancestor purchased of tjje saj(j J0hn, two lots in Lexington, at the price of ‡2000, and was put in possession thereof by said John, and kept it until his death; that the $2000, they believe, was paid, or nearly so, by their ancestor; and that they had n@t the means of ascertaining what was due, if any thing; for, on the death of their ancestor, said John Bobb became his executor, and of course all his receipts, papers and funds fell into the hands of said John; together with the contract in writing, binding the said John to convey the lots. They pray that he niav be compelled to exhibit this contract, if written, or to set out its terms, and show what was paid; and if any thing was due, that he might be decreed to return it out of the personal estate of the decedent, and to account for *241 anti pay the balance of the personal estate to them. They pray a conveyance, and for general relief.
John Bobb answered, explicitly denying that the contract was in writing; but admits there was a verbal contract to sell the lots for $2000, payable in fiye in-stalments, for which notes were given, which he exhibits, and alleges that the complainants’ ancestor was to pay the notes, if he could, and take the lots; but if he failed to pay the notes, or any of them, he was to give up the lots and pay rent for them, and the contract of sale was to be void. He denies that the decedent ever paid any thing, except $100, which was credited on the first note; and thart finding himself unable to pay, had agreed to give up the lots, and had actually let him, John, into possession, before bis death. He alleges that the decedent was ^indebted to him on other accounts, such as for moneys collected by the decedent far him as his agent in this country, he, the said John, residing abroad; also, that he bad. sent leather to the decedent, to be sold, which had been sold and not accounted for. Further, that he and the decedent had become partners in an oil-mill, which was kept by the decedentsfor two years, and the profits not accounted for, as well as the price of half the stock on hand, which the decedent had bound himself to pay," by note, when he came into the partnership; accounts of all which, lie exhibits. He pleads and relies on the statute to prevent frauds ánd perjuries, as to the sale of the lots.
As the Cause progressed, the court referred the accounts tó a commissioner, who reported a balance due from John to William Bobb, at the death of the latter;, and also proceeded to state and settle the executorial accounts, and reported also a large.balance against the Said John Bobb on that score. This report was after-, wards excepted to, and set aside by the court, who decreed that the executorial accounts ought not to be taken into this suit; and after going into a settlement of the other accounts between the parties, the chancellor expressed an opinion that there was no balance, at the death of the decedent, in favor of William Bobb, and decreed that the bill should be dismissed without prejudice, as to the accounts against the defendant as executor of the deceased, and that the defendant recover his costs. To reverse this decree the complainants have brought their writ of error.
*242 There is no proof that the contract relative to the-lots was in writing, and the parol proof strongly conduces to show that the contract was as the defendant has stated in his answer. And even admitting that the complainants could get over the effect and operation of the act to prevent frauds and perjuries, which seems an insuperable bar; still, we apprehend that William Bobb, in his lifetime, had been guilty of such defalcations, in not fulfilling his part of the contract, as to preclude his representatives from a specific performance. It is evident, he never made, but wholly failed to make the payments agreed upon; and John Bobb does not appear to have done any act, waiving the advantage given him by the default of William. There was, then, no error in refusing to decree a conveyance of the lots.
We concur with that court, that the executorial accounts ought not to have been taken into, and settled in this suit, after it was determined the complainants could not recover the lots. Although the bill is somewhat ambiguous, yet it does not set out with a design of charging him with those accounts, and requiring a general settlement thereof, so as to put him upon [ris guard, whether the lots were or were not obtained. It was only in case the lots were to be decreed, and the balance of the price was to be ascertained and paid, that these accounts were eventually and collaterally to be brought in issue, in order that a fund might be raised to pay the balance due for the lots. Of course, when the main object was lost, the incident went with it. It is, however, contended, that this decree bars the right of the complainants, as to these accounts; and therefore, that it ought to be reversed, to open to them access to the personal estate of their ancestor. We should have no hesitation in reversing this decree, if it could be maintained that this is a bar. But we are constrained to come to a contrary conclusion. The decree expressly reserves, and is without prejudice to these rights. The only plausible difficulty in this conclusion, is the expression of an opinion by that decree, that there was no balance in favor of the complainants. The expression of this opinion, however, is rather extrajudicial, on a point not necessary to be decided, after it was ascertained that the complainants could not recover the lots. But what is considered conclusive on the subject, is, the court seems to have entertained the belief of a ditf- *243 tinciion between the accounts existing between, the parties at the death of the decedent, and those properly called executorial. Row, it is plain, that both those before, as well as those after th,e death of the decedent, became executorial, on the administration of the defendant. If the decedent owed him any thing on that event, he had no other remedy, but to retain and charge it up in his account as executor. If, on the contrary, he owed the decedent, the debt became part of the decedent’s estate, already in the hands of the executor; to recover which, the complainants had no other remedy, but process against him as executor. It is ev* ident, then, as that court has excluded fbe.accounts as executor from the effect of the decree, it has excepted, both in terms and substance, these accounts, as ay ell as others, to be re-examined Avithout prejudice, whatever opinion may be expressed as to the existence of no balance at the decedent’s death. By the decree, then, according to their own bill, the complainants are not injured; and by a bill properly filed, with appropriate charges, they may obtain any redress to which they may show themselves entitled.
The decree is, therefore, affirmed, but Avithout costs, as the defendant has made default in this court.